IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON CLAYTON, *et al.*,                     \*

    Plaintiffs,                     \*

                                       Civil Action No. RDB-18-2511

    v.                                        \*

DELMARVA COMMUNITY                            \*
SERVICES, INC., *et al.*,
                                     \*

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs Sharon Clayton, Vivian Thomas, Linda Carr, Consowillo Travers, and Jamez Justice (collectively, "Plaintiffs") have brought this action against Defendants Delmarva Community Services, Inc. and Santo Grande (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 203, *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* ("MWPCL"). Presently pending are the parties' cross-motions for summary judgment. (ECF Nos. 40, 43.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Plaintiffs' Motion for Summary Judgment (ECF No. 43) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 40) is GRANTED. The statute of limitations bars the Plaintiffs' claims. Alternatively, their federal and state claims fail as a matter of law as their "sleep time" is not compensable under either federal or state law.

# BACKGROUND

In ruling on the pending motions for summary judgment, the Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Defendant Delmarva Community Services, Inc. ("Delmarva") is a non-profit organization that provides services to people with developmental disabilities and other diagnoses, people in poverty, and senior citizens in the States of Maryland and Delaware. (Grande Dep. Tr. at 11-12, ECF No. 40-4.) Defendant Santo Grande ("Grande") has served as the President and Chief Executive Officer of Delmarva for approximately the last ten years. (*Id.* at 10:12-15.) Delmarva's services include, but are not limited to, providing day services, community transportation, vocational services, poverty programs, and residential services. (*Id.* at 11-12).

One of the residential services Delmarva provides is the Developmental Disabilities Program, which serves elderly people and people with disabilities in residential homes. (*Id.* at 12-13; Clayton Dep. Tr. at 59:12-20, ECF No. 40-5.) Delmarva began this program in or about 1979 or 1980 in coordination with the Maryland Developmental Disabilities Administration, a state agency that provided Delmarva with funding. (Grande Dep. Tr. at 27:8-29:10, ECF No. 40-4.) One of the components of this program was the creation of Community Living Assistant positions with a sleep staff shift. (*Id.* at 26:21-27:7, 28:13-29:10.) Based on the guidance and funding provided by the State of Maryland, sleep staff were not compensated during the time they spent sleeping overnight in Delmarva's residential homes.

(*Id.* at 26:21-27:7, 28:13-29:10, 34:19-35:7.) This was in compliance with the program established by the Maryland Developmental Disabilities Administration.

Plaintiffs Sharon Clayton ("Clayton"), Vivian Thomas ("Thomas"), Linda Carr ("Carr"), Consowillo Travers ("Travers"), and Jamez Justice ("Justice") were all previously employed as Community Living Assistants in Delmarva's Developmental Disabilities Program. (Grande Dep. Tr. at 12:21-13:2; Clayton Dep. Tr. at 103:8-19, 105:5-14, ECF No. 43-3; Thomas Dep. Tr. at 58:7-12, ECF No. 43-4; Carr Dep. Tr. at 83:8-20, ECF No. 43-5; Travers Dep. Tr. at 59:2-6, ECF No. 43-6; Justice Dep. Tr. at 43-44, ECF No. 43-7.)

As Community Living Assistants, Plaintiffs helped residents live an independent lifestyle in Delmarva's residential homes, assisting with individual care, supervision, daily living activities, and general safety of the residents. (Thomas Dep. Tr. at 67:19-68:2, ECF No. 40-6; Clayton Job Description, ECF No. 40-12; Thomas Job Description, ECF Nos. 40-13, 40-14; Travers Job Description, ECF Nos. 40-15, 40-16; Justice Job Description, ECF No. 40-17.) Plaintiffs also served as "sleep staff," staying overnight with Delmarva residents one week on and one week off, every other Thursday to Thursday in varying residential homes. (Clayton Dep. Tr. at 105:21-109:7, ECF No. 43-3; Thomas Dep. Tr. at 100:12-14, 102:11-19, 104:17-109:17, ECF No. 43-4; Carr Dep. Tr. at 77:19-78:1, 79:21-80:18, ECF No. 43-5; Travers Dep. Tr. at 54:1-55:5, 106:20-107:13, 108:2-10, ECF No. 43-6; Justice Dep. Tr. at 68:2-7, ECF No. 43-7.) Typically, Plaintiffs' work schedules were as follows:

| | |
|---|---|
| Thursday: | 3:00 p.m. – 10:00 p.m. |
| Friday: | 6:00 a.m. – 8:30 a.m.; 3:00 p.m. – 11:00 p.m. |
| Saturday: | 7:00 a.m. – 11:00 p.m. |
| Sunday: | 7:00 a.m. – 11:00 p.m. |
| Monday: | 6:00 a.m. – 8:30 a.m.; 3:00 p.m. – 10:00 p.m. |
| Tuesday: | 6:00 a.m. – 8:30 a.m.; 3:00 p.m. – 10:00 p.m. |

> Wednesday: 6:00 a.m. – 8:30 a.m.; 3:00 p.m. – 10:00 p.m.
> Thursday: 6:00 a.m. – 8:30 a.m.

(*Id.*)

Plaintiffs all had some amount of down time while on the clock, during which time they did not have to complete any tasks and were able to watch television, use social media, make personal telephone calls, play games, read, or just relax. (Clayton Dep. Tr. at 112:7-113:2, ECF No. 40-5; Thomas Dep. Tr. at 149:2-16, ECF No. 40-6; Carr Dep. Tr. at 114:5-9, 132:16-133:16, ECF No. 40-11; Travers Dep. Tr. at 111:7-17, ECF No. 40-9; Justice Dep. Tr. at 78:3-79:3, ECF No. 40-10.) For example, Plaintiff Clayton spent much of her shift watching television, sending text messages, or using social media. (Clayton Dep. Tr. at 112:7-113:2, ECF No. 40-5.) Plaintiff Thomas engaged in personal activities during her working hours, such as making telephone calls, watching television, and using social media. (Thomas Dep. Tr. at 149:2-16, ECF No. 40-6.) Plaintiff Carr watched television, read, and played games on her phone. (Carr Dep. Tr. at 114:5-9, 132:16-133:16, ECF No. 40-11.) Plaintiff Travers also read during her down time. (Travers Dep. Tr. at 111:7-17, ECF No. 40-9.) Plaintiff Justice watched television, relaxed, or read magazines and books in his down time. (Justice Dep. Tr. at 78:3-79:3, ECF No. 40-10.) The time the Plaintiffs clocked out at the end of each workday until they clocked back in the next morning was time designated for sleep or other personal pursuits. (Clayton Dep. Tr. at 106:12-17, 107:17-20, ECF No. 40-5; Thomas Dep Tr. at 105:7-109:13, ECF No. 40-6; Carr Dep. Tr. at 113:20-114:9, ECF No. 40-11; Travers Dep. Tr. at 108:2-17, 116:7-117:1, 119:5-14, 132:18-133:6, ECF No. 40-9; Justice Dep. Tr. at 68:2-6, ECF No. 40-10.)

Plaintiffs' "workweek" began on Monday and ended on Sunday. (Defs.' Interrogatory Responses at 11, ECF No. 43-16.) Plaintiffs clocked in and out of each work shift using Delmarva's "e-time system," whereby they would use the Delmarva residence's telephone to dial a given number and punch in their personal code. (*Id.* at 12-13.) When Plaintiffs were unable to clock in or out, or if they forgot to do so, they would contact their supervisor, Angela Major-Hill, who would ensure that Plaintiffs were properly compensated for time that was not recorded by the e-time system. (*Id.*)

When Plaintiffs "clocked out" at night, they slept at the Delmarva residence and were not permitted to leave. (Grande Dep. Tr. at 20:7-17, ECF No. 43-13; Major-Hill Dep. Tr. at 27:10-12, ECF No. 43-14.) During this "sleep time," Plaintiffs either slept, watched television, read, or engaged in other personal activities. (Clayton Dep. Tr. at 106:12-17, 107:17-20, ECF No. 40-5; Thomas Dep Tr. at 105:7-109:13, ECF No. 40-6; Carr Dep. Tr. at 113:20-114:9, ECF No. 40-11; Travers Dep. Tr. at 108:2-17, 116:7-117:1, 119:5-14, 132:18-133:6, ECF No. 40-9; Justice Dep. Tr. at 68:2-6, ECF No. 40-10.) If they were awakened by a resident during this time, they were instructed to clock back in while attending to the situation in order to be paid for the time spent working. (Clayton Dep. Tr. at 104:7-12, 105:15-20, 160:19-161:8, 162:19-164:3, ECF No. 40-5; Thomas Dep Tr. at 56:3-7, 74:9-16, 138:1-4, 158:4-6, ECF No. 40-6; Carr Dep. Tr. at 92:1-10, ECF No. 40-11; Travers Dep. Tr. at 106:3-19, 124:20-125:16, ECF No. 40-9; Justice Dep. Tr. at 77:5-10, ECF No. 40-10.) Plaintiffs were occasionally awakened to assist residents during the night. (*Id.*; 3d Am. Compl. ¶¶ 22, 33, ECF No. 35.)

The Delmarva residences where Plaintiffs worked were typically single-family homes. (Thomas Dep. Tr. at 86:1-3, ECF No. 40-6; Carr Dep. Tr. at 106:20-107:7, ECF No. 40-11;

Justice Dep. Tr. at 57:6-58:16, ECF No. 40-10.) Plaintiffs slept alone in rooms that were used by other sleep staff members during their off-duty weeks. (Defs.' Admissions at 6, ECF No. 43-17.) Plaintiffs were not permitted to leave their belongings at the residences during their off-duty weeks. (Major-Hill Dep. Tr. at 28:2-6, ECF No. 43-14.)

While Plaintiffs had varying sleeping arrangements at the Delmarva residences, they all had their own rooms. (Clayton Dep. Tr. at 113:3-8, ECF No. 40-5; Thomas Dep. Tr. at 79:20-80:7, 121:17-122:5, 122:21-123:9, 138:19-21, ECF No. 40-6; Carr Dep. Tr. at 100:10-101:7, 104:17-105:7, ECF No. 40-11; Travers Dep. Tr. at 121:6-14, 124:1-2, 125:17-126:7, 136:12-14, 139:8-10, 142:12-13, ECF No. 40-9; Justice Dep. Tr. at 70:21-71:2, 72:15-17, 100:17-101:2, ECF No. 40-10.) All of the Plaintiffs' sleeping arrangements included a bed[1] and a lamp or lighting, and some included a television, closet, chair, and additional furniture. (Clayton Dep. Tr. at 114:14-115:15, 128:21-129:13, ECF No. 40-5; Thomas Dep. Tr. at 80:10-20, 94:1-21, 123:15-124:11, 139:19-140:20, 141:15-142:19, ECF No. 40-6; Carr Dep. Tr. at 101:11-112:13, ECF No. 40-11; Travers Dep. Tr. at 126:8-127:16, 136:15-137:6, 138:21-139:10, ECF No. 40-9; Justice Dep. Tr. at 74:15-75:12, 76:4-15, 87:7-14, ECF No. 40-10.) All of the homes had at least one bathroom, a kitchen, and a living space. (Clayton Dep. Tr. at 117:3-119:16, 128:4-6, ECF No. 40-5; Thomas Dep. Tr. at 84:9-86:6, 125:3-127:21, 128:20-129:5, 139:19-140:4, 147:10-148:10, ECF No. 40-6; Carr Dep. Tr. at 105:8-107:4, 112:14-113:14, ECF No. 40-11; Travers Dep. Tr. at 122:6-123:18, 129:6-130:8, 141:2-142:19, ECF No. 40-9; Justice Dep. Tr. at 57:6-58:16, ECF No. 40-10.) Plaintiffs were not permitted to have guests for periods longer

---

[1] During a six-month period at one of the residences, Justice slept on a sofa instead of a bed. (Grande Decl. ¶ 11, ECF No. 40-7; Justice Dep. Tr. at 86:19-87:6, 87:21-88:17 ECF No. 43-7.)

than ten minutes.  (Delmarva Handbook at DEFS.00338, filed separately, ECF No. 45; Major-Hill Dep. Tr. at 26:19-27:9, ECF No. 43-14.)

At some of the residences, Plaintiffs were not provided with dressers or closets to keep their belongings.  (Thomas Dep. Tr. at 123:21-124:9, 140:9-15, ECF No. 43-4; Justice Dep. Tr. at 72:20-21, 76:9-10, 86:12-87:12, ECF No. 43-7.)  At one of Plaintiff Thomas's assigned residences, she slept in a room off the kitchen with a transparent sliding door, through which the residents had to travel to reach their bedrooms.  (Thomas Dep. Tr. at 122:6-123:5, ECF No. 43-4.)  At another residence, Plaintiff Thomas slept in an open room without a door separating it from the kitchen.  (Benson Dep. Tr. at 38:14-39:2, 43:11-19, 50:10-12, ECF No. 43-15.)

Defendants affixed the required Fair Labor Standards Act and Maryland Wage and Hour Law postings at their headquarters in Cambridge, Maryland, but not in any of the residences to which Plaintiffs were assigned.  (Defs.' Admissions at 4-5, ECF No. 43-17.)  Plaintiffs all acknowledged that they saw the postings at Defendants' headquarters, just beyond the front desk in the lobby of the headquarters.  (Clayton Dep. Tr. at 132:14-133:20, 134:2-12, ECF No. 40-5; Thomas Dep. Tr. at 117:14-119:4, ECF No. 40-6; Carr Dep. Tr. at 118:1-119:14, ECF No. 40-11; Travers Dep. Tr. at 148:5-149:16, 150:6-151:20, ECF No. 40-9; Justice Dep Tr. at 105:4-106:13, ECF No. 40-10.)  When Plaintiffs accepted their positions with Delmarva, they were informed of the job's requirements, the schedule, their non-exempt employee status, the pay structure, *and the fact that they would not be paid for their sleep time.*  (Clayton Job Description, ECF No. 40-12; Thomas Job Descriptions, ECF Nos. 40-13, 40-14; Carr Dep. Tr. at 66:13-67:8, 91:2-7, ECF No. 40-11; Travers Job Descriptions, ECF Nos. 40-15,

40-16; Justice Job Description, ECF No. 40-17; Plaintiffs' Acknowledgement of Attendance and Punctuality Policy, ECF No. 40-20; Clayton Dep. Tr. at 104:2-6, 109:8-10, ECF No. 40-5; Thomas Dep. Tr. at 66:3-5, ECF No. 40-6; Travers Dep. Tr. at 69:9-18, 71:2-15, 132:2-133:1, 169:4-170:5, ECF No. 40-9; Justice Dep. Tr. at 43:17-44:6, 76:21-77:4, ECF No. 40-10.)

It is undisputed that Plaintiffs were not compensated for the time they spent sleeping overnight in Delmarva's residences. (Grande Dep. Tr. at 26:21-27:7, ECF No. 40-4.) It is also undisputed that the parties did not execute a written agreement excluding the time Plaintiffs were required to remain in Delmarva's residences overnight from Plaintiffs' compensable time. (Defs.' Admissions at 5, ECF No. 43-17.) Delmarva's employee handbook also does not contain any written statement about their sleep time policy, but it does explain that some schedules and shifts include "7 Days On/7 Days Off (with a sleep shift)." (Delmarva Handbook, filed separately, ECF No. 45; Delmarva Handbook Attendance and Punctuality Policy at DEFS.00367, ECF No. 40-19.)

On July 10, 2018, Plaintiff Clayton originally brought this action in the Circuit Court of Maryland for Dorchester County. (Compl., ECF No. 1-2.) On August 16, 2018, Defendants removed the action to this Court based on federal question jurisdiction. (Notice of Removal, ECF No. 1.) On January 17, 2019, Plaintiff Clayton filed an Amended Complaint, adding Vivian Thomas as an additional Plaintiff. (Am. Compl., ECF No. 28.) On February 26, 2019, Plaintiffs Clayton and Thomas filed a Third Amended Complaint, adding Linda Carr, Consowillo Travers, and Jamez Justice as additional Plaintiffs. (3d Am. Compl., ECF No. 35.) Following a period of discovery, the Defendants filed their Motion for Summary Judgment

on May 6, 2019.  (ECF No. 40.)  Plaintiffs filed their Cross-Motion for Summary Judgment on June 3, 2019.  (ECF No. 43.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial.  *Id.* at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of

law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they '"may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs, 775 F.3d 1336, 1345 (11th Cir. 2015).*

## ANALYSIS

Plaintiffs seek compensation for the "sleep time" they spent at the Delmarva residences in between their on-duty work hours. Defendants assert that summary judgment is appropriate in their favor under both Plaintiffs' FLSA claim and Maryland wage claims because (1) Plaintiffs' claims are barred by the statute of limitations and equitable tolling should not be invoked; and (2) the Plaintiffs' time spent sleeping is not compensable under either federal or state law. The undisputed record before this Court reveals that, even if Plaintiffs' claims were not barred by the statute of limitations, summary judgment is warranted on all of Plaintiffs'

claims in favor of the Defendants because Plaintiffs' "sleep time" was not compensable work as a matter of law.

## I. Statute of Limitations and Equitable Tolling.

Defendants assert that Plaintiffs' claims are barred by the applicable two-year statute of limitations for the federal Fair Labor Standards Act claims and the three-year statute of limitations for the state claims under MWHL and MWPCL. Further, Defendants argue that equitable tolling does not apply because Plaintiffs were well informed of their rights under the FLSA and Maryland wage statutes by Defendants' conspicuous postings at their headquarters.

Actions to recover unpaid overtime wages under the FLSA must generally be brought no more than two years after the cause of action accrues. *See* 29 U.S.C. § 255(a); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). The limitations period is extended to three years only when the plaintiff can show that the violation was "willful," i.e., that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). Unlike the FLSA, however, the statute of limitations for the MWHL and the MWPCL is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see also Guerra v. Teixeira*, Civ. No. CV TDC-16-0618, 2019 WL 330871, at *13 (D. Md. Jan. 25, 2019).

Equitable tolling of the statute of limitations is available when "plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant" or "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Harris v.*

*Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).  Equitable tolling is meant to be a "rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [his or her] rights.'"  *Id.* at 145-56 (quoting *Chao v. Va Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)).

Plaintiff Clayton accepted her sleep staff position in July of 2015.  (Clayton Dep. Tr. at 103:5-104:15, ECF No. 40-5.)  Plaintiff Thomas accepted her position in February of 2009.  (Thomas Dep. Tr. at 64:118-66:5, ECF No. 40-6.)  Plaintiff Carr began working as sleep staff in 2008.  (Carr Dep. Tr. at 71:3-6, ECF No. 40-11.)  Plaintiff Travers was hired as sleep staff in 2002.  (Travers Dep. Tr. at 52:5-7, ECF No. 40-9.)  Finally, Plaintiff Justice was hired as sleep staff in April of 2014.  (Justice Dep. Tr. at 43:1-3, ECF No. 40-10.)  The parties do not articulate when Plaintiffs' causes of action accrued.  However, the case was removed to this Court on August 16, 2018 (ECF No. 1), and the Plaintiffs Thomas, Carr, Travers, and Justice had clearly worked as sleep staff well over three years before this date.  The Plaintiff Clayton, whose sleep staff position commenced in July of 2015, did not file the underlying state action until July 10, 2018.[2]

In addition, there are no extraordinary circumstances in this case warranting tolling of the statutes of limitations.  In fact, all of the Plaintiffs acknowledged seeing the required FLSA and Maryland wage statute postings at Defendants' headquarters.  (Clayton Dep. Tr. at 132:14-133:20, 134:2-12, ECF No. 40-5; Thomas Dep. Tr. at 117:14-119:4, ECF No. 40-6; Carr Dep. Tr. at 118:1-119:14, ECF No. 40-11; Travers Dep. Tr. at 148:5-149:16, 150:6-151:20, ECF No. 40-9; Justice Dep Tr. at 105:4-106:13, ECF No. 40-10.)  Accordingly, all of Plaintiffs claims

---

[2] Plaintiff Clayton's claims would clearly be barred under the two-year statute of limitations for the FLSA.  With respect to the state claims, it is unclear whether Plaintiff Clayton's claims would be barred by the three-year statute of limitations.  However, for the reasons indicated below, all of her claims fail on the merits regardless.

are likely barred by the statutes of limitations. However, even if the statute of limitations did not bar Plaintiffs' claims, or if this Court applied equitable tolling to consider Plaintiffs' claims on the merits, their claims fail as a matter of law.

## II. Plaintiffs' FLSA Claim Fails as a Matter of Law.

Under the FLSA, employers must compensate employees for all of their hours worked, at a rate that is not less than the federal minimum wage rate. 29 U.S.C. § 206. In addition, the FLSA provides that employers must compensate employees "at a rate not less than one and one-half times" the employee's regular hourly rate for any time the employee is required to work in excess of a 40-hour workweek. 29 U.S.C. § 207.

The parties agree that Plaintiffs were not compensated for their time spent sleeping. (Grande Dep. Tr. at 26:21-27:7, ECF No. 40-4.) The parties also agree that Plaintiffs accepted their jobs with the knowledge that they would not be paid for sleep time, despite the absence of a formal written agreement to this effect. (Clayton Job Description, ECF No. 40-12; Thomas Job Descriptions, ECF Nos. 40-13, 40-14; Carr Dep. Tr. at 66:13-67:8, 91:2-7, ECF No. 40-11; Travers Job Descriptions, ECF Nos. 40-15, 40-16; Justice Job Description, ECF No. 40-17; Plaintiffs' Acknowledgement of Attendance and Punctuality Policy, ECF No. 40-20; Clayton Dep. Tr. at 104:2-6, 109:8-10, ECF No. 40-5; Thomas Dep. Tr. at 66:3-5, ECF No. 40-6; Travers Dep. Tr. at 69:9-18, 71:2-15, 132:2-133:1, 169:4-170:5, ECF No. 40-9; Justice Dep. Tr. at 43:17-44:6, 76:21-77:4, ECF No. 40-10; Defs.' Admissions at 5, ECF No. 43-17.) There are no genuine issues of disputed facts in this matter. There is simply the legal question before this Court: whether the Plaintiffs are entitled to compensation for their sleep time.

To determine whether this time is considered working time under the FLSA, the United States Supreme Court has explained that employees must be compensated if they are "engaged to wait," but an employer is not required to pay an employee who is merely "waiting to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); 29 C.F.R. § 785.14 (quoting *Skidmore*, 323 U.S. at 137); *see also Myers v. Baltimore County, Maryland*, 50 Fed. App'x 583, 587 (4th Cir. Oct. 7, 2002); *Kelly v. Hines-Rinaldi Funeral Home, Inc.*, 847 F.2d 147, 148 (4th Cir. 1988). The United States Department of Labor ("DOL") has implemented regulations to determine whether time spent by employees is compensable as working time. *See* 29 C.F.R. § 785.[3] Specifically, the DOL implemented separate regulations regarding "waiting time" under 29 C.F.R. §§ 785.14-785.17 and "sleeping time and certain other activities" under 29 C.F.R. §§ 785.20-785.23.

Under 29 C.F.R. § 785.14, "waiting time" is compensable if it is time spent "engaged to wait." *See Skidmore*, 323 U.S. at 137. This determination "depends upon particular circumstances," such as the "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances." 29 C.F.R. § 785.14 (quoting *Skidmore*, 323 U.S. at 137).

Under 29 C.F.R. § 785.23,[4] "[a]n employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he

---

[3] The regulations instruct that the "ultimate decision on interpretations of the act are made by the courts," and "thus provide a 'practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply it.'" 29 C.F.R. § 785.2.

[4] There are two additional regulations pertaining to sleep time, 29 C.F.R. § 785.21 and 29 C.F.R. § 785.22, which the parties do not assert in this case. Under 29 C.F.R. § 785.21, employees on duty for less than 24 hours must be compensated for their time spent sleeping. Under 29 C.F.R. § 785.22, employees who work

is on the premises." Accordingly, an employer need not compensate an employee for time when an employee "may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own." 29 C.F.R. § 785.23; *See also Myers*, 50 F. App'x at 587 (citing 29 C.F.R. § 785.23). When an employee resides on the employer's premises, there is a presumption that he or she is not working the entire time on the premises. *Id.* Further, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." 29 C.F.R. § 785.23. "Ultimately, an agreement reached pursuant to section 785.23 is binding if it is reasonable in light of 'all of the pertinent facts' of the employment relationship." *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 199 (4th Cir. 2005) (quoting *Leever v. City of Carson*, 360 F.3d 1014, 1018 (9th Cir. 2004).

A court's analysis of time under *Skidmore* and 29 C.F.R. § 785.14 is a separate and distinct inquiry of sleep time under 29 C.F.R. § 785.23. *See, e.g. Kelly*, 847 F.2d at 148 (finding that employee's time spent between midnight and 6:30 a.m. was time employee spent "wait[ing] to be engaged" and was not compensable under the FLSA based on *Skidmore* and 29 C.F.R. 785.14, with no mention of 29 C.F.R. § 785.23); *Myers*, 50 F. App'x at 586-91 (separately analyzing employee's time spent working under a "waiting to be engaged" analysis and a 29 C.F.R. § 785.23 analysis).

Defendants urge the Court to find that Plaintiffs' sleep time was not compensable under both the "waiting time" analysis of 29 C.F.R. § 785.14 and the "sleeping time" analysis

---

24 hours or more may agree with their employers to exclude no more than eight hours of sleep from their hours worked.

of 29 C.F.R. § 785.23.  This Court is persuaded that Plaintiffs' time spent sleeping was not compensable under 29 C.F.R. § 785.14 and the *Skidmore* test.  However, Defendants' arguments under 29 C.F.R. § 785.23 raise more complicated questions of law that need not be resolved here because summary judgment is appropriate in Defendants' favor for the separate and distinct basis that Plaintiffs' sleep time was time spent "waiting to be engaged" pursuant to 29 C.F.R. § 785.14 and *Skidmore*.

### A. Plaintiffs' sleep time is not compensable because it was time spent waiting to be engaged.

To determine if on-call time is compensable under the FLSA, the critical question is whether "the time is spent predominantly for the employer's benefit or the employee's." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (instructing that the answer depends on all the circumstances of each case); *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 544 (4th Cir. 1998) (citing *Armour & Co.*, 323 U.S. at 133).  Employees must be compensated if they are "engaged to wait," but an employer is not required to pay an employee who is merely "waiting to be engaged."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); 29 C.F.R. § 785.14 (quoting *Skidmore*, 323 U.S. at 137).

To make this determination, courts examine several factors, including:  the agreement of the parties, the nature and frequency of the services provided in relation to the time spent waiting, where the plaintiff is waiting, whether the employee may carry a beeper or leave home, the employee's ability to switch on-call shifts, and whether the employee actually engaged in personal activities during on-call time.  *See* 29 C.F.R. § 785.14 (quoting *Skidmore*, 323 U.S. at 136-37); *Kelly*, 847 F.2d at 148; *Whitten v. City of Easley*, 62 F. App'x 477, 479 (4th Cir. 2003); *Myers*, 50 F. App'x at 587; *Marroquin v. Canales*, 505 F. Supp. 2d 283, 295 (D. Md. 2007).  "[T]he

test is not whether the employee has substantially the same flexibility or freedom [she] would have if not on call." *Whitten*, 62 F. App'x at 480 (quoting *Ingram v. Cnty. Of* Bucks, 144 F.3d 265, 269 (3d Cir. 1998)). Rather, the relevant inquiry is "whether [employees] may actually engage in personal activities during on call shifts." *Id.* (quoting *Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1184-85 (9th Cir. 1994)); *Myers*, 50 F. App'x at 587. This issue may be answered as a matter of law, *Kelly*, 847 F.2d at 148, or if the facts are unclear, may be answered at trial, *Marroquin*, 505 F. Supp. 2d at 295.

This Court is satisfied that this issue may be resolved as a matter of law because Plaintiffs' time sleeping was clearly time spent "waiting to be engaged." The undisputed record in this case shows that when Plaintiffs clocked out at night, they remained at the Delmarva residences and either slept, watched television, read, or engaged in other personal activities. (Clayton Dep. Tr. at 106:12-17, 107:17-20, ECF No. 40-5; Thomas Dep Tr. at 105:7-109:13, ECF No. 40-6; Carr Dep. Tr. at 113:20-114:9, ECF No. 40-11; Travers Dep. Tr. at 108:2-17, 116:7-117:1, 119:5-14, 132:18-133:6, ECF No. 40-9; Justice Dep. Tr. at 68:2-6, ECF No. 40-10.) If they were awakened by a resident during this time, they were instructed to clock back in while attending to the situation in order to be paid for the time spent working. (Clayton Dep. Tr. at 104:7-12, 105:15-20, 160:19-161:8, 162:19-164:3, ECF No. 40-5; Thomas Dep Tr. at 56:3-7, 74:9-16, 138:1-4, 158:4-6, ECF No. 40-6; Carr Dep. Tr. at 92:1-10, ECF No. 40-11; Travers Dep. Tr. at 106:3-19, 124:20-125:16, ECF No. 40-9; Justice Dep. Tr. at 77:5-10, ECF No. 40-10.)

Plaintiffs assert that they were engaged to wait because they did not have complete freedom to leave and would be terminated if they did leave. However, as explained above, the

relevant inquiry is not whether Plaintiffs had the freedom to leave, but whether they had the freedom to engage in personal activities during this time. *See Whitten*, 62 F. App'x at 480. Indeed, the Fourth Circuit has concluded that eating, sleeping, and watching television at night are just the types of personal activities that constitute "uninterrupted personal pursuits." *Myers v. Baltimore County, Maryland*, 50 F. App'x 583, 587 (4th Cir. Oct. 7, 2002). In *Myers*, the Fourth Circuit found that "Caretakers" who were required to live at a park 24 hours per day to respond to infrequent emergencies were not entitled to compensation for such "uninterrupted personal pursuits." *Id.* The Court further noted that there was "no indication that interruptions of private pursuits were frequent enough to render such time work time, that is, time spent predominantly for the benefit of [the employer]." *Id.*

In this case, all five Plaintiffs likewise testified that they were only infrequently awakened to assist residents during the night. (Clayton Dep. Tr. at 104:7-12, 105:15-20, 160:19-161:8, 162:19-164:3, ECF No. 40-5; Thomas Dep Tr. at 56:3-7, 74:9-16, 138:1-4, 158:4-6, ECF No. 40-6; Carr Dep. Tr. at 92:1-10, ECF No. 40-11; Travers Dep. Tr. at 106:3-19, 124:20-125:16, ECF No. 40-9; Justice Dep. Tr. at 77:5-10, ECF No. 40-10; 3d Am. Compl. ¶¶ 22, 33, ECF No. 35.) Plaintiff Thomas testified that "it didn't happen often." (Thomas Dep Tr. at 56:3-7, ECF No. 40-6.). Plaintiff Carr also testified that she did not always clock in when she was awakened because she "didn't see the use to clock in for 10 minutes." (Carr Dep. Tr. at 92:1-10, ECF No. 40-11.) Such infrequent disruption does not create a genuine dispute of fact as to whether Plaintiffs should be compensated for this time. *See Myers*, 50 F. App'x at 587-588. This Court has previously granted summary judgment in favor of the employer when the employee had to reside and remain on an island but "was not so restricted that she [could]

not use her on-call time for personal activities." *Skrzecz v. Gibson Island Corp.*, Civil Action No. RDB-13-1796, 2014 WL 3400614, at *9 (D. Md. July 11, 2014).

In addition, while the Plaintiffs assert that their sleeping arrangements were less than satisfactory, it is undisputed that Plaintiffs all had their own private rooms at the Delmarva residences, with a bed, lighting, and sometimes a television, closet, chair, and additional furniture. (Clayton Dep. Tr. at 113:3-8, 114:14-115:15, 128:21-129:13, ECF No. 40-5; Thomas Dep. Tr. at 79:20-80:20, 94:1-21, 121:17-124:11, 138:19-140:20, 141:15-142:19, ECF No. 40-6; Carr Dep. Tr. at 100:10-112:13, 104:17-105:7, ECF No. 40-11; Travers Dep. Tr. at 121:6-14, 124:1-2, 125:17-127:16, 136:12-137:6, 138:21-139:10, 142:12-13, ECF No. 40-9; Justice Dep. Tr. at 70:21-71:2, 72:15-17, 74:15-75:12, 76:4-15, 87:7-14, 100:17-101:2, ECF No. 40-10.) In addition, all of the homes had at least one bathroom, a kitchen, and a living space. (Clayton Dep. Tr. at 117:3-119:16, 128:4-6, ECF No. 40-5; Thomas Dep. Tr. at 84:9-86:6, 125:3-127:21, 128:20-129:5, 139:19-140:4, 147:10-148:10, ECF No. 40-6; Carr Dep. Tr. at 105:8-107:4, 112:14-113:14, ECF No. 40-11; Travers Dep. Tr. at 122:6-123:18, 129:6-130:8, 141:2-142:19, ECF No. 40-9; Justice Dep. Tr. at 57:6-58:16, ECF No. 40-10.)

The fact that, at some of the homes, Plaintiffs did not have dressers or closets to store their belongings or that Plaintiff Justice slept on a sofa instead of a bed for a 6-month period does not raise a genuine dispute of material fact as to whether this time was spent waiting to be engaged. *See VanDyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954) ("The record shows that [employee] was furnished a room with a bed, heater and telephone; that he had the added facilities of a wash basin and toilet nearby…we cannot say that such facts fall short of substantiating the District Court's finding of adequate facilities."); (*See* Thomas Dep. Tr. at

123:21-124:9, 140:9-15, ECF No. 43-4; Justice Dep. Tr. at 72:20-21, 76:9-10, 86:12-87:12, ECF No. 43-7.) In fact, 29 C.F.R. § 785.14 makes no mention of "adequate" sleeping facilities. Rather, this language comes from 29 C.F.R. § 785.22, which Plaintiffs do not assert in this case. *See* 29 C.F.R. § 785.22 9 ("provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep").

Moreover, all of the Plaintiffs testified that, even during their working hours, they often had down time to watch television, use social media, make personal telephone calls, play games, read, or just relax. (Clayton Dep. Tr. at 112:7-113:2, ECF No. 40-5; Thomas Dep. Tr. at 149:2-16, ECF No. 40-6; Carr Dep. Tr. at 114:5-9, 132:16-133:16, ECF No. 40-11; Travers Dep. Tr. at 111:7-17, ECF No. 40-9; Justice Dep. Tr. at 78:3-79:3, ECF No. 40-10.) In addition, Plaintiffs Thomas and Carr both testified that the homes contained all of the furnishings and amenities one would find in a private house. (Thomas Dep. Tr. at 86:1-3, ECF No. 40-6; Carr Dep. Tr. at 106:20-107:7, ECF No. 40-11.) Considering all of the circumstances and nature of the employment agreement, which Plaintiffs acknowledged did not compensate them for their time spent sleeping, the Court finds that, as a matter of law, Plaintiffs' overnight time was time during which they were waiting to be engaged, time that was not compensable under the FLSA. *See Myers*, 50 F. App'x at 587-588; *Whitten*, 62 F. App'x at 480; *Kelly*, 847 F.2d at 148; *Skrzecz*, 2014 WL 3400614, at *9. Accordingly, summary judgment on Plaintiffs' FLSA claim is appropriate in favor of the Defendants.

### B. The Court need not apply 29 C.F.R. § 785.23.

As the party seeking the benefit of Section 785.23, Defendants bear the burden of establishing its application and that the employment agreement with Plaintiffs was reasonable.

*Garofolo*, 405 F.3d at 199-200.  Plaintiffs argue that Defendants have failed to meet all of the requirements of 29 C.F.R. § 785.23 because Plaintiffs did not reside in Delmarva's residences for an extended period of time.  Plaintiffs specifically contend that Defendants failed to provide them with adequate sleeping quarters and did not provide them with periods of complete freedom.  However, the record shows that the Plaintiffs and Defendants had a reasonable employment agreement under which Plaintiffs resided at Delmarva residences for one week at a time, Plaintiffs were provided adequate sleeping accommodations and periods of complete freedom, and Plaintiffs and Defendants agreed that sleep time would not be compensated.

Plaintiffs contend that they did not reside at Delmarva's residences for an extended period of time because "they did not remain on Delmarva's premises for five consecutive nights in a single workweek."  (Pls.' Cross-Motion at 25, ECF No. 43-1.)  While the United States Court of Appeals for the Fourth Circuit has not specifically addressed what constitutes "extended periods of time" under 29 C.F.R. § 785.23, there is a split of authority among other circuits.  *See Beaston v. Scotland School for Veterans' Children*, 693 F. Supp. 234 (M.D. Pa. 1988), *aff'd*, 869 F.2d 587 (3d Cir. 1989); *Giguere v. Port Resources Inc.*, 927 F.3d 43 (1st Cir. 2019).

In *Beaston*, the employees worked at a residential school for seven-day shifts that began at 3:00 p.m. on a Friday and ended at 8:30 a.m. the following Friday.  693 F. Supp. at 235.  The Third Circuit affirmed the District Court's finding that because the employees "spend seven consecutive days and nights on campus, they reside there for an extended period of time."  *Id.* at 239.  Under this interpretation, Plaintiffs in this case would meet the "extended period of time" requirement because they also spent seven consecutive nights in Delmarva's residences.

(*See* Defs.' Interrogatory Responses at 11, ECF No. 43-16; Clayton Dep. Tr. at 105:21-109:7, ECF No. 43-3; Thomas Dep. Tr. at 100:12-14, 102:11-19, 104:17-109:17, ECF No. 43-4; Carr Dep. Tr. at 77:19-78:1, 79:21-80:18, ECF No. 43-5; Travers Dep. Tr. at 54:1-55:5, 106:20-107:13, 108:2-10, ECF No. 43-6; Justice Dep. Tr. at 68:2-7, ECF No. 43-7.)

In *Giguere*, the plaintiffs similarly worked seven days on, seven days off from Thursday through Thursday, while their employer's workweek was Sunday through Sunday. *Id.* at 46. However, the First Circuit affirmed the District Court's finding that the employer had *not* met the "extended periods of time" requirement under 29 C.F.R. § 785.23 based on a 1988 Department of Labor Enforcement Policy ("1988 DOL Policy"). *Id.* (citing U.S. Dep't of Labor, Wage & Hour Div., Enforcement Policy, 2018 WL 614199, at *2 (June 30, 1988)). The 1988 DOL Policy "stated that an employee meets the extended-periods-of-time standard when … he 'resides on the premises for a period of at least <u>120 hours in a workweek,</u>'" and "defined workweek' as 'seven consecutive 24-hour periods,' citing 29 C.F.R. § 778.105 … which provides that … once the employer has established when the workweek begins, the workweek's span 'remains fixed regardless of the schedule of hours worked by [the employee.'" *Id.* at 48. The Court explained that because the employer had established a workweek of Sunday to Sunday, and the employees worked Thursday to Thursday, then the employees could not be found to have resided on the employers' premises for "extended periods of time," as contemplated by 29 C.F.R. § 785.23. *Id.* at 49-50.

Under the First Circuit's interpretation of the regulation, Plaintiffs in this case would not have resided on the Defendants' premises for an extended period of time, or at least 120 hours in the employer's workweek, because the Defendants' workweek was defined as Monday

through Sunday, and Plaintiffs' sleep shifts were Thursday through Thursday. (*See* Defs.' Interrogatory Responses at 11, ECF No. 43-16; Clayton Dep. Tr. at 105:21-109:7, ECF No. 43-3; Thomas Dep. Tr. at 100:12-14, 102:11-19, 104:17-109:17, ECF No. 43-4; Carr Dep. Tr. at 77:19-78:1, 79:21-80:18, ECF No. 43-5; Travers Dep. Tr. at 54:1-55:5, 106:20-107:13, 108:2-10, ECF No. 43-6; Justice Dep. Tr. at 68:2-7, ECF No. 43-7.)

This Court is not persuaded that the First Circuit's understanding of "extended periods of time" based on the employer's workweek is the correct interpretation. While the First Circuit noted that the 1988 DOL Policy has not been superseded and is still used by the DOL, there is additional guidance by the DOL that suggests that "extended periods of time" is not defined by the employer's workweek under 29 C.F.R. § 778.105. (*See*, e.g., U.S. Dep't of Labor, Wage & Hour Div., Administrator's Interpretation No. 2014-1 (Mar. 27, 2014), 2014 WL 1276986; Dep't of Labor, *Exclusion of Sleep Time from Hours Worked by Domestic Service Employees* (Apr. 25, 2016).) For example, in a 2014 Opinion Letter, the DOL defined "extended periods of time" as "to work and sleep there for five days a week (120 hours or more) or five consecutive days or nights (regardless of the total number of hours," without reference to the employer's workweek or 29 C.F.R. § 778.105. 2014 WL 1276986 at *9, *12 n.22. Similarly, in a 2016 DOL Field Assistance Bulletin, "extended periods of time" was defined as "work[ing] and sleep[ing] there for five days a week (120 hours or more) or five consecutive days or nights (regardless of the total number of hours)," without reference to an employer's workweek or 29 C.F.R. § 778.105. Dep't of Labor, *Exclusion of Sleep Time from Hours Worked by Domestic Service Employees* (Apr. 25, 2016) at 2-3. This varying guidance shows that the DOL has not clearly established what constitutes the requisite period of time to determine whether employees

reside on their employer's premises for "extended periods of time." Consequently, this Court is not inclined to adopt the First Circuit's understanding without more definitive guidance from the DOL or the Fourth Circuit.

In any event, the circuit split on this issue is not dispositive here in light of the separate and independent basis for this Court's decision. Accordingly, because this Court found, *supra*, that Plaintiffs' time spent sleeping is not compensable on a separate basis, this Court need not resolve whether Plaintiffs resided on Defendants' premises for "extended periods of time" as required by 29 C.F.R. § 785.23.

### III. Plaintiffs' State Law Claims Fail as a Matter of Law.

Plaintiffs' state law claims under the MWHL and the MWPCL fail for the same reasons as their FLSA claim. This Court has noted that both the FLSA and Maryland law distinguish between time "engaged to be waiting," which is compensable, and "waiting to be engaged," which is not. *Marroquin v. Canales*, 505 F. Supp. 2d 283, 295 (D. Md. 2007). With little guidance on the issue, Plaintiffs assert that Maryland law provides them greater benefits than does the FLSA. (ECF No. 49 at 2.) Plaintiffs specifically address this Court's recent opinion in *Jones v. Fidelity Resources, Inc.*, Civil Action No. RDB-17-1447, 2019 WL 414015, at *7 (D. Md. Aug. 30, 2019).

Plaintiffs' understanding of *Jones* is misplaced. In *Jones*, this Court noted that "employees who are not fully covered by the FLSA may nevertheless claim the benefits of the more generous provisions of Maryland law." 2019 WL 414015, at *7. In this case, there is not a "more generous provision" of Maryland law asserted. Indeed, both parties agree that Maryland law is silent as to the compensability of sleep time. Yet Maryland courts have

analyzed the compensability of on-call time. *See Dep't of Pub. Safety & Corr. Servs. v. Palmer*, 886 A.2d 554, 454-55 (Md. 2005); *Hess v. Dep't of Juvenile Servs.*, 962 A.2d 1037, 1044 (Md. Ct. Spec. App. 2008) (citing United States Dep't of Labor, Wage & Hour Div., Opinion Letters – Fair Labor Standards Act, No. FLSA2008-14NA (Dec. 18, 2008)). Those cases involved a provision of the Code of Maryland Regulations, COMAR 17.04.11.02(B)(1)(g), related to time on call, that grants "greater" benefits than the FLSA. However, COMAR 17.04.11.02(B)(1)(g) only applies to State employees whose pay is determined by the Department of Budget and Management pursuant to Md. Code Ann., State Pers. & Pens. § 8-302. Plaintiffs are not such employees and their claims are not based on this COMAR provision. Additionally, the Plaintiffs note that the Maryland Department of Labor, in guidance on what constitutes "work," notes factors that are similar to those identified by the Federal Department of Labor. *See* Md. Dep't of Labor, Licensing & Regulation, *Md. Guide to Wage & Payment Empl. Standards*, What is Work? (2014). Therefore, there is no basis to conclude that the definition of on-call time under the MWHL and the MWPCL is any broader or more generous than on-call time under the FLSA.

In addition, where a Maryland appellate court has not addressed an issue, to the extent that a state analogue is analogous to a federal statute, the decisions of federal courts are highly persuasive authority. *See, e.g.*, *Klupt v. Krongard*, 728 A.2d 727, 735 (Md. Ct. Spec. App. 1999) ("When, as here, there is little Maryland precedent, we look to cases interpreting analogous federal rules.") A more recent opinion from the Court of Special Appeals of Maryland confirms this understanding. In *Poe v. IESI MD Corp.*, the Maryland Court of Special Appeals explained that "[b]ecause the [MWHL] is the counterpart to the Fair Labor Standards Act, the

federal regulation is, therefore, persuasive authority as to the correct interpretation of Maryland law." 243 Md. App. 243, 252, 220 A.2d 333 (Nov. 20, 2019). The Court further held that there was "no basis in the language of the Maryland statutes or regulations to conclude that Maryland law prohibits employers from relying on the federal regulation" to determine the overtime owed. *Id.* at 253. Likewise here, this Court finds no basis to find that Maryland law prohibits Defendants from relying on the FLSA to determine the compensability of Plaintiffs' time.

Accordingly, for the same reasons that Plaintiffs' time is not compensable under the FLSA because it was time spent "waiting to be engaged," so too is that time not compensable under the MWHL and the MWPCL. Indeed, Defendants' sleep time policy was implemented in coordination with the Maryland Developmental Disabilities Administration, a state agency that provided Delmarva with funding. (Grande Dep. Tr. at 27:8-29:10, ECF No. 40-4). Based on the State of Maryland's own guidance, sleep staff were not to be compensated during the time they spent sleeping overnight in Delmarva's residential homes. (*Id.* at 26:21-27:7, 28:13-29:10, 34:19-35:7.)

Defendants also assert that Plaintiffs' state law claims are preempted by the FLSA. Under the Supremacy Clause of the United States Constitution, federal law is "the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI. Thus, a federal law preempts a state law when "the state law actually conflicts with federal law."[5] *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th

---

[5] This form of preemption—known as "conflict preemption"—should not be confused with "express preemption" and "field preemption." *See Anderson*, 508 F.3d at 191 & n.10.

Cir. 2007) (quotation marks omitted). A state law actually conflicts with a federal law if "it is impossible to comply with both state and federal law or … the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law." *Id.* at 191-92 (internal quotation marks omitted).

The Court need not engage in a preemption analysis here, where the MWHL and MWPCL track the requirements of the FLSA regarding on-call time. *See Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003) ("The requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA."). Defendants' reliance on *Balbed v. Eden Park Guest House, LLC*, which remanded the federal and state law claims to the district court to consider the question of preemption in the context of 29 C.F.R. § 785.23, is inapposite in this case where this Court has based its findings on the waiting time regulations under 29 C.F.R. § 785.14. *See* 881 F.3d 285, 293 n.6 (4th Cir. 2018).

Accordingly, summary judgment on Plaintiffs' state law claims under the MWHL and MWPCL is also appropriate in favor of the Defendants. Summary judgment shall be entered in favor of the Defendants on all of Plaintiffs' claims.[6]

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 40) is GRANTED and Plaintiffs' Motion for Summary Judgment (ECF No. 43) is DENIED.

A separate Order follows.

---

[6] The Court need not address Plaintiffs' assertion that Santo Grande is jointly and severally liable with Delmarva because the Court finds as a matter of law that Delmarva is not liable.

Dated: March 23, 2020

                                         /s/ _____
                                     Richard D. Bennet
                                     United States District Judge